IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Elvis Joseph Amarame,               )<br>                                                   )<br>                         Plaintiff,     )<br>                                                   )<br>             vs.                              )<br>                                                   )<br>Matthew B. Hamidullah, Robert Gates, )<br>and Joseph Owens,                       )<br>                                                   )<br>                         Defendants.  )<br>                                                   ) | Civil Action No. 6:07-2775-HFF-WMC<br><br>**ORDER AND<br>REPORT OF MAGISTRATE JUDGE** |

       This matter is before the court on several motions filed by the plaintiff. The plaintiff, who is proceeding *pro se*, filed this action pursuant to Title 42, United States Code, Section 1983, claiming that his constitutional rights were violated while he was incarcerated at the Federal Correctional Institution in Estill, South Carolina ("FCI Estill").

       Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the District Court.

       On August 14, 2007, before the defendants were served with the complaint, the plaintiff filed a motion for a temporary restraining order and/or preliminary injunction (doc. no. 3). In that motion, the plaintiff seeks "relief from any further discrimination, verbal and physical assaults, harassment, inducements by Defendants . . .; for retaliations by them or other persons under their control and custody, to immediately cease and desist from wrongful acts outside their official positions."

       On September 26, 2007, the plaintiff filed a "supplemental" motion for a temporary restraining order and/or preliminary injunction (doc. no. 11). In that motion, in

addition to his previous requests, the plaintiff asks that the court stop "previously unscheduled transfers; trumped-up incident reports; arbitrary shakedowns . . .; and efforts not to allow Plaintiff to continue his prostrate treatment . . . ."

In his "emergency TRO [temporary restraining order] motion" (doc. no. 12) filed October 1, 2007, the plaintiff seeks to prevent a pending transfer to another prison. He states that on September 21, 2007, he was instructed to pack his property for a transfer (m. for TRO 2-5). After he had discussions with several staff protesting this transfer, he asserts he was told that he was not being moved. The plaintiff claims that defendant Owens conspired with Unit Manager Elizabeth Carlson to transfer him for improper reasons (*id.* 6-7). He does not contend that defendants Gates or Hamidullah were involved in this decision. He asserts that he cannot be transferred because he is currently undergoing specialized medical treatment that, if he does not continue, will cause him to die (*id.* 7).

The plaintiff was recently referred for transfer to a lower security facility when, after a team review, his security/custody level decreased (def. resp. m. for TRO, ex. A, Jenifer Grundy Hollett decl. ¶ 4). This transfer was approved, and he was initially scheduled to be moved on September 21, 2007. None of the defendants were involved in this decision to transfer him. However, given bed space considerations, he was removed from the bus list for that date (*id.* ¶ 7).

According to the defendants, the plaintiff's medical condition was taken into account when he was recommended for transfer (*id.* ¶ 5). The plaintiff was sent to a urologist on July 19, 2007, for follow-up on an elevated PSA and pain (pl. m. for TRO, att. 3). That doctor recommended a transrectal ultrasound and biopsy. The report was received in late July. The plaintiff was subsequently referred to a general surgeon for the recommended tests (Hollet decl. ¶ 12). The surgeon suggested that a colonoscopy be conducted to determine if the ultrasound was necessary (*id.* ¶ 12). That procedure was in the process of being scheduled when the transfer occurred. Medical staff was consulted

to determine if the pending test was a reason to delay the transfer (*id*. ¶ 13). According to the defendants, as the recommended tests are fairly routine, they are available at other prison facilities, including McRae (*id*. ¶ 13). Therefore, the defendants decided there was no reason to stop the transfer while waiting on the colonoscopy (*id.* ¶ 13).

The plaintiff was removed from FCI Estill on October 10, 2007, and transported to USP Atlanta temporarily, en route to his newly designated, lower security facility (*id*. ¶ 9). According to the defendants, while housed at USP Atlanta, the plaintiff had access to all necessary services, including medical care (*id.*).

On October 17, 2007, the plaintiff was transported from USP Atlanta to the McRae Correctional Facility ("McRae"), located in McRae, Georgia, a low security privately-owned and operated correctional institution that houses federal offenders pursuant to contract (*id*. ¶¶ 4, 10). The plaintiff's medical records were transferred with him to McRae (*id.* ¶ 15). The defendants contend that, if he has not already been, the plaintiff will be screened by medical personnel at that facility who will make arrangements for necessary testing. The defendants claim that the plaintiff's medical records do not indicate that he is in danger of death from prostate problems at this time (*id.* ¶ 14).

The defendants argue that the relevant considerations weigh against granting the motions for injunctive relief. In determining whether to grant injunctive relief prior to trial, a court must balance four factors:

(a) The plaintiff's likelihood of success in the underlying dispute between the parties;

(b) whether the plaintiff will suffer irreparable injury if the injunction is not issued;

(c) the injury to the defendant if the injunction is issued; and

(d) the public interest.

*Scotts Company v. United Industries Corporation*, 315 F.3d 264, 271 (4th Cir. 2002); *Blackwelder Furniture Co. v. Seilig Manufacturing Co.*, 550 F.2d 189, 193 (4th Cir. 1977). The court must first determine whether the plaintiff has made a strong showing of irreparable harm if the injunction were to be denied; if so, then the court must balance the likelihood of harm to the plaintiff against the likelihood of harm to the defendant if the injunction were issued. *Scotts*, 315 F.3d at 271. If the balance tips decidedly in favor of the plaintiff, "a preliminary injunction will be granted if the plaintiff has raised questions going to the merits so serious, substantial, difficult, and doubtful, as to make them fair ground for litigation and thus more deliberate investigation." However, if the balance does not tip decidedly there must be a strong probability of success on the merits. *Direx Israel, Ltd. v. Breakthrough Medical Corp.*, 952 F.2d 802, 812-13 (4th Cir. 1991). Lastly, the court must evaluate whether the public interest favors granting preliminary relief. *Id.* at 814.

Here, as argued by the defendants, the plaintiff has not made a strong showing of irreparable harm if the injunctions were to be denied. The plaintiff was being treated for an elevated PSA and rectal pain, and he was referred for additional diagnostic testing. It appears that testing can occur at McRae just as it would have occurred at FCI Estill. Furthermore, as to the plaintiff's likelihood of success on the merits, prisoners have no protected interest in placement in a particular facility. *See Olim v. Wakinekona*, 461 U.S. 238, 244-48 (1983). Here, it appears that the plaintiff's security level decreased, and he was transferred to a more appropriate facility, commensurate with his security needs. In addition, the plaintiff's requests with regard to his treatment at FCI Estill and his transfer to another institution are moot as the plaintiff had already arrived at his new institution.

On October 18, 2007, the plaintiff filed a motion to stay (doc. no. 17), advising the court that he is being quarantined in the United States Penitentiary ("USP") located in Atlanta, Georgia, and asking this court to stay the proceedings until he is transferred to a

4

designated facility.  As set forth above, the plaintiff was transported from USP Atlanta to McRae on October 17, 2007.  Accordingly, the motion to stay is moot.

Wherefore, based upon the foregoing, it is recommended that the plaintiff's motions for injunctive relief (doc. nos. 3, 11, 12) be denied.  However, defendant Hamidullah should be directed to instruct the medical personnel at FCI Estill to contact the medical personnel at McRae to ensure that they are aware of the need to schedule the plaintiff's required tests as soon as possible.  Further, it is ordered that the motion to stay (doc. no. 17) is moot.

                                                          s/William M. Catoe
                                                          United States Magistrate Judge

October 25, 2007

Greenville, South Carolina