IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Elvis Joseph Amarame, )<br><br>Plaintiff, )<br><br>vs. )<br><br>Matthew B. Hamidullah, Robert )<br>Gates, and Joseph Owens, )<br><br>Defendants. )<br>_____ ) | Civil Action No. 6:07-2775-HFF-WMC<br><br>**REPORT OF MAGISTRATE JUDGE** |

This matter is before the court on the defendants' motion to dismiss.  The plaintiff, who is proceeding *pro se*, seeks relief pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A) and Local Civil Rule 73.02(B)(2)(e) D.S.C., all pretrial matters in cases involving *pro se* litigants are referred to a United States Magistrate Judge for consideration.

The plaintiff claims that the defendants violated his rights to be free from libel and slander, discrimination, retaliation, false allegations, loss of proper and infliction of mental distress while housed at the Federal Correctional Institution located in Estill, South Carolina ("FCI Estill").  Specifically, he claims that in February 2006, defendant Gates interfered with his work detail, assaulted him, and called him various degrading and malicious names.  He asserts that defendant Owens improperly interfered with his work conditions and took a typewriter ribbon belonging to him and gave it to another inmate.  Defendant Hamidullah is being sued for creating a "prison atmosphere where certain staff members believed they have license to discriminate, falsely accuse, physically assault" the

plaintiff.  The plaintiff seeks a variety of monetary damages from each defendant, individually and jointly.

The plaintiff is currently incarcerated at the McRae Correctional Facility, located in McRae, Georgia ("McRae").  From March 24, 2003, to October 10, 2007, the plaintiff was housed at FCI Estill.  He is serving a 240-month sentence imposed on April 15, 1996, by the United States District Court for the Northern District of Georgia for conspiracy and possession with intent to distribute heroin, as well as conspiracy and attempt to import heroin, in violation of 21 U.S.C. §§ 841(a)(1), 846, 952, and 963.  The plaintiff's anticipated release date, with good conduct time, is November 2, 2011.  He also has a detainer for deportation to Nigeria.

On January 16, 2008, the defendants filed a motion to dismiss.  By order filed on January 18, 2008, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion.  The plaintiff filed his opposition to the motion to dismiss on April 1, 2008.

## FACTS PRESENTED

The plaintiff was assigned to work in the Recreation Department at FCI Estill (comp. memo. ¶7).  Defendants Gates and Owens are both Recreation Specialists at FCI Estill (*id.*).  The plaintiff did clerical work for defendant Gates (*id*. ¶8).  In January 2006, defendant Gates opened a locked grill at the plaintiff's request to let him out of the area after normal movement time (*id*. ¶9).  Defendant Gates pushed the plaintiff in the back of the head through the doorway, causing the plaintiff's kufi (described by the plaintiff as a religious cap) to tear (*id*.).  Defendant Gates cursed at the plaintiff after letting him through the grill (*id*.)  Defendant Gates paid other inmates more to work for him than he paid the plaintiff (*id*. ¶10).  The plaintiff received pay under the Inmate Performance Pay program

2

(*id*.).  Defendant Gates told other inmates not to give the plaintiff any of Gates' work to do (*id*. ¶11).  In February 2006, defendant Gates told other inmates that the plaintiff is a homosexual and cursed the plaintiff outside the plaintiff's presence (comp. memo. ¶12).  When the plaintiff filed his administrative grievance, either defendant Gates or some unnamed "defendants" retaliated by not paying the plaintiff mandatory performance pay for three unidentified months (*id*. ¶13; comp. 4).  Either some unnamed staff member or defendant Gates falsely accused the plaintiff of distributing flyers to incite inmate resistence to staff control in the recreation department (comp. memo. ¶ 14; comp. 4).  The plaintiff was placed in the Special Housing Unit as a result of these accusations and, while there, he lost some books from his personal property.  He claims unknown staff members took his property (comp. memo. ¶ 14).

       At some unnamed time in 2005, defendant Owens took a typewriter wheel from the plaintiff and gave it to another inmate (comp. memo. ¶15).  In March 2006, defendant Owens stopped inmates and staff from giving clerical work to the plaintiff to do, claiming he would "fire that African from the Recreation Department" or saying, "Do not give Recreation typing work to that little Nigerian" (comp. memo. ¶17; comp. 4).  In January 2007, another inmate told the plaintiff he was fired from his job and that he had until 2 p.m. on January 19, 2007, to remove his personal property from the safe cabinet in the Leisure Library (comp. memo. ¶18).  When the plaintiff confronted defendant Owens, he confirmed that he sent the inmate to tell the plaintiff to remove his personal property from the safe cabinet, but denied that the plaintiff was being replaced in his job by that inmate (*id*. ¶20).  When the February 2007 work schedule was posted, the plaintiff's name was not on it (*id*. ¶21).  That schedule was prepared by someone other than the defendants (*id*.).  The plaintiff approached this staff member and threatened to tell the new warden about his mistreatment if they did not return him to the work schedule (*id*. ¶22).  The plaintiff was returned to the schedule (*id*.).

3

Defendant Hamidullah was the Warden at FCI Estill (comp. 5).  The plaintiff claims that he allowed this discrimination to occur without stopping it (comp. memo. ¶24). Warden Hamidullah denied the plaintiff due process by not interviewing him on March 26, 2006, about the flyers and having him placed in the Special Housing Unit the following morning (comp. memo. ¶25).  The plaintiff approached Warden Hamidullah and told him that he was falsely accused and that staff lost some of his personal property when he was in the Special Housing Unit and demanded that Warden Hamidullah direct his staff to locate the items (*id.* ¶ 27; comp. 5).  Warden Hamidullah said he would investigate, although he never got back with the plaintiff about the purported wrongdoings (comp. memo. ¶27).

## ANALYSIS

Under Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss for failure to state a claim should not be granted unless it appears certain that the plaintiff can prove no set of facts which would support the claim and would entitle him to relief.  In considering a motion to dismiss, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff.  *Mylan Laboratories, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)(citations omitted).

### *Eighth Amendment*

The plaintiff alleges that his constitutional rights were violated when defendant Gates pushed him in the back of the head as he walked through an open door, which caused his religious cap to tear.  The plaintiff alleges no physical injury from the defendant's action.

The Eighth Amendment expressly prohibits the infliction of "cruel and unusual punishments."  U.S. Const. amend. VIII.  To succeed on any Eighth Amendment claim for

4

cruel and unusual punishment, a prisoner must prove: (1) objectively, the deprivation of a basic human need was sufficiently serious, and (2) subjectively, the prison officials acted with a "sufficiently culpable state of mind." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991); *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). "'[I]t is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock.'" *Moore v. Winebrenner*, 927 F.2d 1312, 1316 (4th Cir. 1991) (quoting *Whitley v. Albers,* 475 U.S. 312, 319 (1986)). In *Norman v. Taylor*, 25 F.3d 1259, 1263 (4th Cir. 1994) (en banc), the court held that "absent the most extraordinary circumstances, a plaintiff cannot prevail on an Eighth Amendment excessive force claim if his injury is *de minimis*." Further, "extraordinary circumstances are present when 'the force used [is] of a sort repugnant to the conscience of mankind … or the pain itself [is] such that it can properly be said to constitute more than *de minimis* injury.'" *Taylor v. McDuffie*, 155 F.3d 479, 483-84 (4th Cir. 1998) (citing *Norman*, 25 F.3d at 1263 n. 4).

This court agrees with the defendants that the plaintiff has failed to establish a claim that rises to the level of a constitutional deprivation. Accordingly, summary judgment should be granted on this claim.

**Due Process**

The plaintiff alleges that he was denied due process in connection with his placement in the Special Housing Unit ("SHU") at FCI Estill. "To prevail on either procedural or substantive due process claim, inmates must first demonstrate that they were deprived of life, liberty, or property by governmental action." *Beverati v. Smith*, 120 F.3d 500, 502 (4th Cir. 1997). It has been noted that the "substantive component of the due process clause protects against only the most egregious, arbitrary governmental conduct

5

– that is, conduct that can be said to 'shock[ ] the conscience.'" *Patten v. Nichols*, 274 F.3d 829, 834 (4th Cir. 2001) (citation omitted).  The clause is invoked only "when a Fourteenth Amendment-protected liberty interest is at stake." *Berrier v. Allen*, 951 F.2d 622, 624 (4th Cir. 1991).  "Liberty interests protected by the Fourteenth Amendment may arise from two sources – the Due Process Clause itself and the laws of the States.  The Due Process Clause itself confers only a very limited range of protected liberty on inmates lawfully convicted and confined in prison. Its substantive protection extends only to punishment and conditions of confinement not contemplated by the original prison sentence." *Id.*  The Supreme Court has recognized that the "States may under certain circumstances create liberty interests which are protected by the Due Process Clause."  However, these liberty interests are "generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process clause of its own force … nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995) (citations omitted).  "*Sandin* found no liberty interest protecting against a 30-day assignment to segregated confinement because [the assignment] did not 'present a dramatic departure from the basic conditions of [the inmate's] sentence.'" *Wilkinson v. Austin*, 545 U.S. 209, 223 (2005) (quoting *Sandin*, 515 U.S. at 485).  The Due Process Clause of its own force does not afford a prisoner a liberty interest in remaining in the general prison population. *Lekas v. Briley*, 405 F.3d 602, 607 (7th Cir. 2005).  Generally, "the transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence," and therefore, "administrative segregation is the sort of confinement ... inmates should reasonably anticipate receiving at some point in their incarceration." *Hewitt v.*

6

*Helms*, 459 U.S. 460, 468 (1983).[1]   The plaintiff has failed to show that his temporary placement in the SHU violated his due process rights.  Accordingly, this claim fails.

### Prison Job

The plaintiff alleges various issues with regard to his prison job assignment, including that he was told he was fired from his job, he was later taken off of the work schedule, and after he complained he was returned to the work schedule.  The plaintiff does not have a constitutional right to a prison job.  *See Bulgur v. United States Bureau of Prisons*, 65 F.3d 48, 50 (5th Cir. 1995) (finding that federal prisoner did not have a legitimate claim of entitlement to continuing his Federal Prison Industries employment).  The plaintiff has failed to state a constitutional claim.  Accordingly, this claim fails.

### Equal Protection

The Equal Protection Clause essentially mandates "that all persons similarly situated should be treated alike."  *City of Cleburne, Tex. v. Cleburne Living Center*, 473 U.S. 432, 439 (1985).  To succeed on an Equal Protection claim, the plaintiff must demonstrate that he "'has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination.'"  *Veney v. Wyche*, 293 F.3d 726, 730-31 (4th Cir. 2002) (quoting *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001)).  Racial discrimination claims are actionable, but merely conclusory allegations of discrimination are insufficient to state a claim. *Chapman v. Reynolds*, 378 F.Supp. 1137, 1140 (W.D.Va. 1974).  A prisoner must show purposeful discrimination that has a discriminatory effect on him in order to state a claim. *McCleskey v. Kemp*, 481 U.S. 279, 292 (1987).

---

[1]Unrelated portions of the holding in *Hewitt v. Helms* have been superannuated by later case law.

7

The plaintiff's one assertion related to national origin is that defendant Owens said something about getting "that African" or that "Nigerian" removed from the recreation work detail. However, the plaintiff's own allegations demonstrate that he was not removed from that work detail. He continued to be assigned to the Recreation Department (comp. memo. ¶¶22-23). Although he asserts the defendants have "continued to remove" his name from the schedule, he does not assert that he was removed from the work detail. Moreover, he intimates that he was still assigned to that detail when he states that the defendants continue to use other inmates to "provoke" him in the Recreation Department Leisure Library (comp. memo. ¶23). The plaintiff does not allege that other inmates were treated differently/better than he was, nor does he tie such preferential treatment to his national origin. Thus, even if defendant Owens did the things he is accused of, the plaintiff fails to state a viable claim of national origin discrimination or an Equal Protection violation. Accordingly, this claim fails.

### Retaliation

The plaintiff claims that he was retaliated against once he filed grievances complaining about the actions of defendants Owens and Gates. Retaliation against an inmate for the exercise of a First Amendment right may state a claim. *Hudspeth v. Figgins,* 584 F.2d 1345, 1348 (4th Cir. 1978). Retaliation by an official is actionable even if the act would have been proper if taken for different reasons. *American Civil Liberties Union, Inc. v. Wicomico County*, 999 F.2d 780, 785 (4th Cir. 1993). In order to state a retaliation claim, the plaintiff "must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). He must allege sufficient facts to warrant concern that the alleged retaliation might have a chilling effect on the exercise of the right to access the courts and show that he suffered more than *de minimis* inconvenience. *Wicomico County*,

8

999 F.2d at 785-86 & n. 6.  The inmate need not succumb entirely or even partially to the threat; it is sufficient that the retaliation was intended to limit the prisoner's right of access to the court and was reasonably calculated to have that effect. *Hudspeth*, 584 F.2d at 1348.  However, the plaintiff must allege specific facts supporting his claim of retaliation; bare assertions of retaliation do not establish a claim of constitutional dimension. *Adams*, 40 F.3d at 75.  Conclusory allegations of retaliation are insufficient to support his claim or establish the necessary element of adversity.  *Wicomico County*, 999 F.2d at 785. Moreover, claims of retaliation are treated with skepticism in the prison context. *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996).  Each alleged act of retaliation must violate some constitutional right or be punishment for the exercise of such a right. *Id.* at 1318.

The plaintiff claims that defendant Gates retaliated against him for filing administrative grievances by not paying him the mandatory Inmate Performance Pay for at least three months and by conspiring with defendant Owens to phase out the Leisure Library and to replace it with a video viewing and exercise room (comp. memo. ¶13). He also claims that they conspired to remove his name from the recreation work schedule; however, his name was ultimately returned to the schedule.  Based upon the foregoing, and assuming all of the plaintiff's allegations are true, this court cannot say that it appears certain that the plaintiff can prove no set of facts that would support his claim and entitle him to relief.  Accordingly, the motion to dismiss should be denied as to this claim.

### Deliberate Indifference to Safety

The plaintiff alleges that defendant Gates told other inmates that the plaintiff is a homosexual, putting his life in danger.  Deliberate indifference to an inmate's safety needs is actionable under Section 1983. *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994) (prison officials have duty to protect prisoners from violence "at the hands of other prisoners") (brought under *Bivens v. Six Unknown Named Agents of the Federal Bureau*

9

*of Narcotics*, 403 U.S. 388 (1971)). *See also Benefield v. McDowall*, 241 F.3d 1267, 1271-72 (10th Cir. 2001) (inmate does not have to wait until he or she is actually assaulted before obtaining relief) (citing *Woodhous v. Virginia*, 487 F.2d 889, 890) (4th Cir. 1973)("A prisoner has a right, secured by the eighth and fourteenth amendments, to be reasonably protected from constant threat of violence and sexual assault by his fellow inmates, and he need not wait until he is actually assaulted to obtain relief."));[2] *Miltier v. Beorn*, 896 F.2d 848, 851-852 (4th Cir. 1990) ("A defendant acts recklessly by disregarding a substantial risk of danger that is either known to the defendant or which would be apparent to a reasonable person in the defendant's position.").

The Eighth Amendment expressly prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. To succeed on any Eighth Amendment claim for cruel and unusual punishment, a prisoner must prove: (1) objectively, the deprivation of a basic human need was sufficiently serious, and (2) subjectively, the prison officials acted with a "sufficiently culpable state of mind." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991); *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). "'[I]t is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official

---

[2]At the time *Woodhous* was decided, inmate attacks were evaluated under a negligence standard. Although the negligence standard for Section 1983 actions was superannuated by later caselaw, *Woodhous* is still good law on the issue of inmate attacks. *See Gilland v. Owens*, 718 F. Supp. 665 (W.D. Tenn.1989). In *Gilland*, the court stated:

> *Woodhous* applies a negligence standard to the conduct of officials in protecting inmates from assault or the threat of assault. While this aspect of *Woodhous* no longer correctly represents the law in this circuit, *see McGhee v. Foltz,* 852 F.2d 876, 881 (6th Cir.1988), its holding that an inmate has a right to be free from constant threat of violence is still an accurate statement of the law.

*Gilland*, 718 F.Supp. at 686 n.13.

control over a tumultuous cellblock.'" *Moore v. Winebrenner*, 927 F.2d 1312, 1316 (4th Cir. 1991) (quoting *Whitley v. Albers,* 475 U.S. 312, 319 (1986)).

This court cannot say at this stage that the plaintiff can prove no set of facts that would support his claim and entitle him to relief.  *See Harmon v. Berry*, 728 F.2d 1407, 1409 (11th Cir. 1984) ("[The plaintiff's] claims, construed liberally as they must be, allege that prison officials have labeled him a snitch and are exposing him to inmate retaliation, perhaps because of his conduct in bringing prior lawsuits against the center. The claim, on its face, is sufficient to carry this cause of action through the service of process stage."). Accordingly, the motion to dismiss should be denied as to this claim.


### Defendant Hamidullah

It is well settled that liability in civil rights cases brought under *Bivens* or 42 U.S.C. § 1983 may not be premised upon a respondeat superior theory.  *See Polk County v. Dodson*, 454 U.S. 312, 325-26 (1981), and *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 694 (1978).  The plaintiff must establish three elements to hold a supervisor liable for a constitutional injury inflicted by a subordinate:  (1) the supervisor had actual or constructive knowledge that a subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to people like the plaintiff; (2) the supervisor's response was so inadequate as to constitute deliberate indifference or tacit authorization of the subordinate's conduct; and (3) there is an "affirmative causal link" between the supervisor's inaction and the plaintiff's constitutional injury. *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir.), *cert. denied*, 513 U.S. 813 (1994).

Assuming the plaintiff's facts are true, the only specific allegation against him is that he failed to respond to the plaintiff's written and verbal requests concerning his alleged lost property (comp. memo. ¶ 27).  Allegations that the plaintiff inmate wrote to prison officials and was ignored are insufficient to hold those officials liable for

11

constitutional violations. *See Rivera v. Goord*, 119 F.Supp.2d 327, 344 (S.D.N.Y. 2000); *Watson v. McGinnis*, 964 F.Supp. 127, 130 (S.D.N.Y. 1997) ("The law is clear that allegations that an official ignored a prisoner's letter are insufficient to establish liability.") "[T]o allow a mere letter to an official to impose supervisory liability would permit an inmate to place liability on individuals who had no authority over the situation complained of merely by sending letters." *Johnson v. Wright*, 234 F.Supp.2d 352, 363 (S.D.N.Y. 2002)). Based upon the foregoing, the claim against defendant Hamidullah fails.

### Tort Claims

As argued by the defendants, "the Due Process Clause is simply not implicated by a negligent act of an official causing the unintended loss of or injury to life, liberty or property." *Daniels v. Williams*, 474 U.S. 327, 328 (1986) (no constitutional violation where prison official sued individually when prisoner tripped and fell over pillow left on stairs). To the extent the plaintiff seeks to pursue a claim for negligence or damage to personal property (regarding the alleged damage to his kufi, the loss of books while in SHU, and taking of his typewriter ribbon) under the Federal Tort Claims Act ("FTCA"), the proper avenue for relief is to file an administrative claim under the FTCA. *See* 28 U.S.C. § 2675. An action under the FTCA is "the exclusive remedy for loss of property arising or resulting from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." *Id.* § 2679(b)(1). The plaintiff has not demonstrated exhaustion under the FTCA, nor does he assert jurisdiction under this statute. Accordingly, any such claim fails.

### Miscellaneous Claims

The plaintiff has failed to properly plead a claim for denial of access to the courts. The United States Constitution guarantees prisoners the right of meaningful

access to the courts. *Bounds v. Smith*, 430 U.S. 817 (1977). In *Bounds*, the Supreme Court held that the right of access imposes an affirmative duty on prison officials to assist inmates in preparing and filing legal papers, either by establishing an adequate law library or by providing adequate assistance from persons trained in the law. *Id.* at 828. In *Lewis v. Casey*, 518 U.S. 343, 349 (1996), the Supreme Court held that a prisoner must show some actual injury resulting from a denial of access in order to allege a constitutional violation. This requirement can be satisfied by demonstrating that a non-frivolous legal claim was frustrated or impeded by some actual deprivation of access. *Id.* at 352-53. A claim for failure to provide access to the courts must be pleaded with specificity. *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996). The plaintiff has failed to allege any actual injury. Accordingly, any such claim alleged by the plaintiff fails.

The plaintiff cites 42 U.S.C. § 1985 in his complaint. Section 1985 does not contemplate actions against federal officials acting under color of federal law. *Stockheimer v. Underwood*, 428 F.Supp. 192, 194 (D.C. Wis. 1977). Furthermore, the plaintiff claims his rights under the Geneva Convention have ben violated. The plaintiff has not alleged that he is a prisoner of war and, as such, the Geneva Convention does not apply to him. *See United States v. Noriega*, 808 F.Supp. 791, 794 (S.D. Fla. 1992). Accordingly, such claims fail.

The plaintiff claims that the loss of his books delayed his participation in a correspondence course. However, education in prison is not constitutionally mandated. *See Rhodes v. Chapman*, 452 U.S. 337, 348 (1981) ("We would have to wrench the Eighth Amendment from its language and history to hold that delay of these desirable aids [jobs and educational opportunities] to rehabilitation violates the Constitution."). *See also Doles v. Smith*, No. 94-6791, 1994 WL 526033, *2 (4th Cir. 1994) ("[T]here is no constitutional entitlement to work assignments or education during incarceration.") . Accordingly, the claim fails.

13

## CONCLUSION AND RECOMMENDATION

Based upon the foregoing, this court recommends that the defendants' motion to dismiss (doc. 42) be granted in part and denied in part as set forth above. Should the district court adopt this court's recommendation, the defendants should be given the opportunity to file a motion for summary judgment with regard to the surviving claims for retaliation and deliberate indifference.


s/William M. Catoe
United States Magistrate Judge

July 31, 2008

Greenville, South Carolina

14

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail.  Fed. R. Civ. P. 6(a) & (e).  Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
P.O. Box 10768
Greenville, South Carolina 29603

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).