IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Elvis Joseph Amarame, ) | |
| ) | Civil Action No. 6:07-2775-HFF-WMC |
| Plaintiff, ) | |
| ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. ) | |
| ) | |
| Robert Gates and Joseph Owens, ) | |
| ) | |
| Defendants. ) | |
| ) | |

This matter is before the court on the defendants' motion for summary judgment. The plaintiff, who is proceeding *pro se*, seeks relief pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A) and Local Civil Rule 73.02(B)(2)(e) D.S.C., all pretrial matters in cases involving *pro se* litigants are referred to a United States Magistrate Judge for consideration.

The plaintiff claims that the defendants violated his rights to be free from libel and slander, discrimination, retaliation, false allegations, denial of access to the courts, and infliction of mental distress while housed at the Federal Correctional Institution located in Estill, South Carolina ("FCI Estill"). Specifically, he claims that in February 2006, defendant Gates interfered with his work detail, assaulted him, and called him various degrading and malicious names. He asserts that defendant Owens improperly interfered with his work conditions and took a typewriter ribbon belonging to him and gave it to another inmate. Defendant Hamidullah is being sued for creating a "prison atmosphere where certain staff members believed they have license to discriminate, falsely accuse, physically assault" the

plaintiff. The plaintiff seeks a variety of monetary damages from each defendant, individually and jointly.

The plaintiff is currently incarcerated at the McRae Correctional Facility, located in McRae, Georgia ("McRae"). From March 24, 2003, to October 10, 2007, the plaintiff was housed at FCI Estill. He is serving a 240-month sentence imposed on April 15, 1996, by the United States District Court for the Northern District of Georgia for conspiracy and possession with intent to distribute heroin, as well as conspiracy and attempt to import heroin, in violation of 21 U.S.C. §§ 841(a)(1), 846, 952, and 963. The plaintiff's anticipated release date, with good conduct time, is November 2, 2011. He also has a detainer for deportation to Nigeria.

On January 16, 2008, the defendants filed a motion to dismiss all the plaintiff's claims for failure to state a claim. On July 31, 2008, this court recommended that all claims except the retaliation and deliberate indifference claims be dismissed. On September 9, 2008, the Honorable Henry F. Floyd, United States District Judge, adopted this court's recommendation and dismissed all claims except the retaliation and deliberate indifference claims. Also, all claims against defendant Hamidullah were dismissed.

On October 6, 2008, the remaining defendants filed a motion for summary judgment as to the remaining claims. By order filed on October 7, 2008, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. The plaintiff filed his opposition to the motion for summary judgment on December 12, 2008. The defendants filed a reply on January 30, 2009, and the plaintiff filed a sur-reply on March 10, 2009. The defendants then filed another reply on April 24, 2009.

**FACTS PRESENTED**

The plaintiff was assigned to work in the Recreation Department at FCI Estill (def. m.s.j., ex. A, Robert Gates decl. ¶ 2). Defendant Gates and defendant Owens are both Recreation Specialists at FCI Estill (*id.* ¶1; def. m.s.j., ex. B, Joseph Owens, Jr. decl. ¶1). Inmates assigned as Recreation Orderlies are given a variety of tasks to complete (Gates decl. ¶3; Owens decl. ¶3). Some hand out sports equipment while others maintain the leisure library or clean the various recreation areas (*id.*). Some act as clerks, doing paperwork requested by staff (*id.*). Any Recreation Specialist may assign specific tasks to an inmate to complete (Gates decl. ¶3; Owens decl. ¶¶ 3 - 4). According to defendant Owens, he did not assign specific tasks to the plaintiff nor did he prevent other staff from doing so (Owens decl. ¶4). Further, defendant Owens denies he ever told others to stop assigning work to "that little Nigerian" (*id.* ¶11). Defendant Gates testified he did not assign specific tasks to the plaintiff nor did he prevent other staff from doing so (Gates decl. ¶7). While these tasks may be assigned to a particular inmate to complete, they may be changed at any time (*id.* ¶4).

Inmate orderlies are not on a traditional "work schedule" (*id.*; Owens decl. ¶13). Those who have been assigned specific tasks may be listed on the informal accountability sheet that Recreation Staff prepare internally (*id.*). This document is prepared to assist Recreation staff in locating specific inmates in the varying areas that comprise the Recreation Department (*id.*). It is not a formal work schedule that is prepared and posted.

According to defendants Owens and Gates, the plaintiff did not have much contact with either of them (Gates decl. ¶¶ 5-6; Owens decl. ¶¶ 3-4). Neither Gates nor Owens assigned the plaintiff to any specific task (Gates decl. ¶7; Owens decl. ¶4). While they might have had casual contact with the plaintiff, while checking him in at the beginning

of his shift or performing accountability checks, the plaintiff did not work directly for either defendant (Gates decl. ¶¶ 5-6; Owens ¶¶ 3-4).

For a period of time, defendant Gates was assigned the responsibility of keying inmate performance pay for the Recreation Department (Gates decl. ¶8). Inmates assigned to the Recreation Department are given Inmate Performance Pay based on the work they perform during the month. The basic level of performance pay, called "maintenance pay," is $5.25 per month (*id.*). Generally, Recreation Orderlies are paid at this rate unless they perform a specific task with regularity (*id.*). Then, so long as their performance is good, they will received $9.60 per month (*id.*).

When defendant Gates took over the performance pay responsibilities, he initially paid the plaintiff $5.25 per month, maintenance pay (Gates decl. ¶9). The plaintiff confronted defendant Gates about this, saying that he worked for another Recreation Specialist and had gotten paid $9.60 before (*id.*). Defendant Gates took the plaintiff at his word and began to pay him $9.60 per month thereafter (*id.*). According to defendant Gates' testimony, this change was made as soon as the plaintiff brought his concerns to defendant Gates (*id.*).

In early 2007, Kathryn Mack, the Supervisor of the Education and Recreation Departments, decided to dedicate a portion of the leisure library space to Wellness materials and activities (Owens decl. ¶7; def. m.s.j., ex. D, Kathryn Mack decl. ¶¶5 - 6). That area was the space where the plaintiff liked to sit and use the typewriter (Owens decl. ¶7). Defendant Owens went into the leisure library to inspect the area. He saw that there was a desk with a typewriter and a file cabinet with an inmate lock on it. He opened the lock and found that the plaintiff was storing personal items in the drawer. Defendant Owens went to the plaintiff and told him to remove the lock and his personal items from the filing cabinet. Defendant Owens advised the plaintiff that the area was going to be dedicated to Wellness materials. The typewriter was to be moved to the other side of the room, where

the other inmate typewriters were located.  The plaintiff was advised that he could work in that area (*id.*).  According to defendant Owens' testimony, a few minutes later, three inmates approached him and told him that the plaintiff wanted them to talk to Owens about moving Amarame out of his job, before he "filed on" Owens (*id.* ¶8).  Defendant Owens told these three inmates that he would not discuss another inmate with them, and they left (*id.*).

According to defendant Owens, shortly thereafter, the plaintiff approached defendant Owens and asked "do you know who I am"? (Owens decl. ¶9).  The plaintiff told Owens that he was a prominent attorney in his country and said that Owens was firing him from "his job for no reason."  Defendant Owens explained that nothing about his work status was changing; he was simply moving from one part of the room to another, as the area he had previously occupied was to be dedicated to Wellness materials (*id.*).

Sometime later, the plaintiff and another inmate had heated words in the leisure library (Owens decl. ¶10).  Defendant Owens had assigned the other inmate to arrange and oversee the Wellness materials in that part of the leisure library.  Defendant Owens later learned that the plaintiff did not care for this other inmate, feeling that he was usurping an area that had previously been the plaintiff's domain and that he was taunting the plaintiff about it.  According to the testimony of defendant Owens, he spoke to this inmate and told him to leave the plaintiff alone.  Defendant Owens heard nothing further about potential problems between these inmates (*id.*).

Defendant Gates testified that he never called the plaintiff a "homosexual" nor did he use profanity toward him or about him (Gates decl. ¶12; Owens decl. ¶15).  Both defendants Gates and Owens were unaware of any complaints the plaintiff may have filed against themselves or other staff at FCI Estill until they were notified of this litigation (Gates decl.¶11; Owens decl. ¶17).

**APPLICABLE LAW AND ANALYSIS**

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson,* 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of

the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248. Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must provide existence of every element essential to his action which he bears the burden of adducing at a trial on the merits.

### *Retaliation*

The plaintiff claims that he was retaliated against once he filed grievances complaining about the actions of defendants Owens and Gates. Retaliation against an inmate for the exercise of a First Amendment right may state a claim. *Hudspeth v. Figgins,* 584 F.2d 1345, 1348 (4th Cir. 1978). Retaliation by an official is actionable even if the act would have been proper if taken for different reasons. *American Civil Liberties Union, Inc. v. Wicomico County*, 999 F.2d 780, 785 (4th Cir. 1993). In order to state a retaliation claim, the plaintiff "must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). He must allege sufficient facts to warrant concern that the alleged retaliation might have a chilling effect on the exercise of the right to access the courts and show that he suffered more than *de minimis* inconvenience. *Wicomico County*, 999 F.2d at 785-86 & n. 6. The inmate need not succumb entirely or even partially to the threat; it is sufficient that the retaliation was intended to limit the prisoner's right of access to the court and was reasonably calculated to have that effect. *Hudspeth*, 584 F.2d at 1348. However, the plaintiff must allege specific facts supporting his claim of retaliation; bare assertions of retaliation do not establish a claim of constitutional dimension. *Adams*, 40 F.3d at 75. Conclusory allegations of retaliation are insufficient to support his claim or

establish the necessary element of adversity. *Wicomico County*, 999 F.2d at 785. Moreover, claims of retaliation are treated with skepticism in the prison context. *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996). Each alleged act of retaliation must violate some constitutional right or be punishment for the exercise of such a right. *Id*. at 1318.

The plaintiff claims that defendant Gates retaliated against him for filing administrative grievances by not paying him the mandatory Inmate Performance Pay for at least three months and by conspiring with defendant Owens to phase out the Leisure Library and to replace it with a video viewing and exercise room (comp. memo. ¶13). He also claims that they conspired to remove his name from the recreation work schedule; however, his name was ultimately returned to the schedule.

As explained by defendant Gates, when he took over the inmate pay responsibilities for the Recreation Department, he paid all inmates who were not performing specific assigned tasks at the maintenance pay level ($5.25) (Gates decl. ¶8). Inmates who were performing specific tasks were paid $9.60 (*id.* ¶¶8 - 9). Defendant Gates initially paid the plaintiff at the maintenance pay level. When the plaintiff complained to Gates, telling Gates that he was doing specific tasks assigned by another specialist, defendant Gates took action to change the plaintiff's pay rate. That change was made the first time the plaintiff brought this issue to defendant Gates' attention (*id.*). Defendant Owens has not been involved in the decision as to how much the plaintiff was to be paid any month (Owens decl. ¶14).

Review of the inmate performance pay records reveals that the plaintiff was paid $24 in March, May, and June of 2005 (def. reply, ex. D, Inmate Performance Pay for Plaintiff). From July to October 2005, he was paid $9.60. In October 2005, he was paid $4.80. In December 2005, he was paid $5.25 (*id.*). Each of these periods pre-dates the filing of grievances (*see* docket nos. 32-3, 32-4, 32-5). As argued by the defendants, the evidence demonstrates there was no legitimate expectation of a particular amount of pay

for the plaintiff's work assignment in Recreation.  Clearly, there was no expectation that he would be paid $24 each month as he claimed in his affidavit.  The evidence shows that the amount of performance pay for an inmate fluctuates based on the work performed, the grade level, the number of hours worked, and the like.  It can vary from month to month and inmate to inmate (def. reply, ex. B, Marla Hall Wallace decl. ¶8;  28 C.F.R. §545.26).  The plaintiff's pay varied for several months prior to his grievance filings, which began in July 2006 (*see* def. reply, ex. D; docket nos. 32-3, 32-4, 32-5) and which were the purported bases for the defendants' retaliation.  His pay changed periodically prior to and after the grievance filings; thus, it is illogical to assume the change was solely based on the filing of grievances.

The next basis for his retaliation claim is that the defendants conspired to dedicate a portion of the leisure library to Wellness activities.  The evidence shows that the decision was made to use a portion of the leisure library as a Wellness information center (Mack decl. ¶¶ 5- 6; Owens decl. ¶7).  This decision was made by Katheryn Mack, the Supervisor of Education and Recreation, not by defendant Owens (Mack decl. ¶6; Owens decl. ¶7). The area that was selected was an area that the plaintiff liked to use, but was not the only place available for him to do his work (Owens decl. ¶7).  The plaintiff was using a file cabinet in that area to store his personal items.  He was advised by defendant Owens of the impending change in the use of that specific area and of the need to remove his personal items from that file cabinet.  He was also advised that his work duties were not changing, merely the location was moving to another part of the same room (*id.*).  Clearly there was no interference with the plaintiff's ability to work – he was just directed to do the work in another part of the same room as before.  The fact that the space changed from the leisure library purpose to a wellness area does not impact the plaintiff's safety or constitutional rights.

9

As argued by the defendants, the plaintiff has absolutely no standing to challenge the decision to use a particular space in the prison for a particular program. He has no right to control that area. The plaintiff claims this decision was made by defendant Owens, in concert with defendant Gates, in retaliation for grievances. There is nothing to support his contention. Defendant Gates notes that he was not involved in the Wellness activities or the moving of that program into the Leisure Library space (def. reply, ex. E, Gates supp. decl. ¶¶ 17-18). He further states that Recreation Specialists, such as he and defendant Owens, were not authorized to make such decisions on their own and that such a decision would have been made by the Supervisor (*id.*¶18). Moreover, the plaintiff's assertion that it was defendant Owen who directed Ms. Mack to make changes to the Wellness program location is completely untenable. She explains that there was a need for a dedicated space for the program (Mack decl. ¶5). She directed Mr. Owens to take action to reassign a space in the leisure library area (*id.*). That decision was hers and "was in no way related to any specific inmate" (*id.* ¶6). This action occurred in early 2007, at least six months after the grievance was first initiated by the plaintiff (Mack decl. ¶ 5; Owens decl. ¶ 7).

Lastly, the plaintiff claims the defendants retaliated against him when his name was removed from a work schedule, even though it was later returned. There is no evidence that indicates when this alleged action occurred, so it is impossible to determine if it was before or after the filing of the grievance in July 2006. Recreation Specialist Isaac Rhodes explains that he would prepare this list of who was assigned to maintain the Leisure Library based on information provided by the detail supervisors (def. reply, ex. A, Isaac Rhodes decl. ¶¶9-12). He was never told by either defendant to remove the plaintiff's name from that list (*id.* ¶¶4, 13). He does not recall ever discussing the Leisure Library list with the plaintiff, although he does recall that the plaintiff's name was periodically on and off that list (*id*. ¶10). If an inmate complained about his name not being on that list, Mr. Rhodes

would check with the Recreation Specialists overseeing that area and with the Recreation Supervisor; only then would he make a change to the list (*id*. ¶¶ 11-12). Mr. Rhodes indicates that neither of the defendants directed him to remove the plaintiff's name from the list (*id.* ¶¶ 4, 13, 14). There is no indication from the plaintiff as to when this purported bad act occurred, and there is no evidence to support the claim that defendants Owens or Gates were in any way involved in that decision (*id.* ¶¶ 13-14).

There is absolutely no evidence that any of these actions were taken in retaliation for any grievance filings. Both defendants testified they were unaware of any of the plaintiff's complaints until they were served in this litigation (Gates decl. ¶11; Owens decl. ¶17). The plaintiff expresses some incredulity at the idea that the defendants were unaware of the grievance he filed until they received notice of this suit. The various declarations provided with the motion state, under oath, that these defendants were unaware of the filing. That is not at all untenable, as the plaintiff states, given the response that was provided to him. The responses of the Warden, Regional Director, and National Appeals all indicated that the matter was referred for investigation to appropriate authorities (doc. nos. 32-3, 32-4, 32-5). Nowhere in those responses does it indicate that any inquiry was made of the defendants, nor is there any attempt to address the allegations raised by the plaintiff. The evidence shows that the investigation into this matter did not occur until November 2007, after the plaintiff was transferred from FCI Estill (Hollett decl. ¶ 5). These defendants were not made aware of plaintiff's allegations until sometime between November 8 and 11, 2007 (*id.*). The plaintiff cannot provide any evidence that the defendants were aware of his grievances prior to the date of service of this litigation. The plaintiff must demonstrate some connection between the actions, the defendants, and their knowledge of his grievance against them in order to argue that any action they took was in retaliation for such grievances. He cannot do so. Accordingly, this claim fails.

11

***Deliberate Indifference to Safety***

The plaintiff alleges that defendant Gates told other inmates that the plaintiff is a homosexual, putting his life in danger. First of all, there is no allegation that defendant Owens was in any way involved in the actions alleged by the plaintiff. Accordingly, such claim fails against defendant Owens.

Deliberate indifference to an inmate's safety needs is actionable under Section 1983. *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994) (prison officials have duty to protect prisoners from violence "at the hands of other prisoners") (brought under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971)). *See also Benefield v. McDowall*, 241 F.3d 1267, 1271-72 (10th Cir. 2001) (inmate does not have to wait until he or she is actually assaulted before obtaining relief) (citing *Woodhous v. Virginia*, 487 F.2d 889, 890) (4th Cir. 1973)("A prisoner has a right, secured by the eighth and fourteenth amendments, to be reasonably protected from constant threat of violence and sexual assault by his fellow inmates, and he need not wait until he is actually assaulted to obtain relief."));[1] *Miltier v. Beorn*, 896 F.2d 848, 851-852 (4th Cir. 1990) ("A defendant acts recklessly by disregarding a substantial risk of danger that is either known to the defendant or which would be apparent to a reasonable person in the defendant's position.").

The Eighth Amendment expressly prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. To succeed on any Eighth Amendment claim for

---

[1] At the time *Woodhous* was decided, inmate attacks were evaluated under a negligence standard. Although the negligence standard for Section 1983 actions was superannuated by later caselaw, *Woodhous* is still good law on the issue of inmate attacks. *See Gilland v. Owens*, 718 F. Supp. 665 (W.D. Tenn.1989). In *Gilland*, the court stated:

> *Woodhous* applies a negligence standard to the conduct of officials in protecting inmates from assault or the threat of assault. While this aspect of *Woodhous* no longer correctly represents the law in this circuit, *see McGhee v. Foltz,* 852 F.2d 876, 881 (6th Cir.1988), its holding that an inmate has a right to be free from constant threat of violence is still an accurate statement of the law.

*Gilland*, 718 F.Supp. at 686 n.13.

cruel and unusual punishment, a prisoner must prove: (1) objectively, the deprivation of a basic human need was sufficiently serious, and (2) subjectively, the prison officials acted with a "sufficiently culpable state of mind." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991); *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). "'[I]t is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock.'" *Moore v. Winebrenner*, 927 F.2d 1312, 1316 (4th Cir. 1991) (quoting *Whitley v. Albers,* 475 U.S. 312, 319 (1986)).

Here, the plaintiff alleges that defendant Gates called him a "homosexual" in front of other inmates. The plaintiff does not seek injunctive relief on the deliberate indifference claim, but merely damages. In order to demonstrate the required extreme deprivation for purposes of an Eighth Amendment claim for damages, a prisoner must allege "a serious or significant physical or emotional injury resulting from the challenged conditions." *Strickler v. Waters*, 989 F.2d 1375, 1381 (4th Cir. 1993). In his complaint, the only harm he claims from the alleged reference, which is denied by the defendants, is that he is the subject of "ongoing gossips and innuendos" (comp. 14). Defendant Gates denies making the comment (Gates decl. ¶ 12). However, for purposes of this motion, the court will assume the comment was made by Gates.

The plaintiff alleges that he will be politically destroyed in his homeland of Nigeria as a result of the alleged comment, that he has suffered public humiliation and defamation, and that he is the subject of gossip and innuendo. Nowhere in the extensive pleadings does the plaintiff outline any actual harm in the intervening three years since the comment was allegedly made. As argued by the defendants, that the plaintiff's reputation may have suffered is simply not the stuff of a Constitutional deprivation. *Paul v. Davis*, 424 U.S. 693, 712 (1976) (holding that the interest in reputation is not a "liberty" or "property"

13

right guaranteed by procedural due process, and that something more than simple defamation must be implicated to establish a claim under § 1983).

Assuming for the purposes of this motion that the statement was made, the plaintiff has offered nothing in support of his averment that his life was in danger. The plaintiff was incarcerated at FCI Estill from March 24, 2004, through October 10, 2007 (Hollett decl. ¶3). This statement was allegedly made on February 26, 2006. If the plaintiff's life was in danger, he is required to proffer some fact in support thereof. The plaintiff has neither alleged or produced evidence of any fights, threats, complaints to staff, or physical or mental injury. *See Morris v. Newland*, No. CIV S-00-2794, 2007 WL 707525, *6 (E.D. Cal., March 6, 2007) (The vague description that a defendant spread rumors that an inmate was a homosexual does not state an Eighth Amendment violation).

As argued by the defendants, given the absence of any actual harm, the plaintiff's claim devolves into one which, at most, asserts a claim of verbal harassment. This is not the stuff of cruel and unusual punishment. Not every unpleasant experience a prisoner may face, like verbal abuse or harassment, constitutes cruel and unusual punishment. *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987). "[R]udeness and name-calling does not rise to the level of a constitutional violation." *Cuoco v. Moritsugu*, 222 F.3d 99, 109 (2d Cir.2000). Based upon the foregoing, the plaintiff's claim for deliberate indifference fails.

## **CONCLUSION AND RECOMMENDATION**

Based upon the foregoing, this court recommends that the defendants' motion for summary judgment be granted (doc. 69) be granted.

April 27, 2009                                 s/William M. Catoe
Greenville, South Carolina              United States Magistrate Judge

14